FILED
2015 Sep-15  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ELUSTER CAPEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:14-cv-01581-AKK** |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Eluster Capel ("Capel") brings this action pursuant to 42 U.S.C. §1383(c)(3) and 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. Procedural History

Capel filed his application for Title XVI Supplemental Security Income on March 26, 2012 (R. 154-62), alleging a disability onset date of April 9, 2010, (R. 154), due to carpal tunnel, knee problems, and high blood pressure, (R. 196). After

the SSA denied his application on May 24, 2012, (R. 104-108), Capel requested a hearing. (R. 111). At the time of the hearing on July 12, 2013, Capel was 51 years old, (R. 66, 154), had a twelfth-grade education, (R. 57, 65, 77, 197, 224), and had past work experience as a trailer-truck driver, (R. 77-78, 197-98, 204, 211-13). Capel has not engaged in substantial gainful activity since his alleged onset date. (R. 54).

The ALJ denied Capel's claim on August 22, 2013, (R. 52-66), which became the final decision of the Commissioner on July 15, 2014 when the Appeals Council refused to grant review. (R. 1-4). Capel then filed this action pursuant to 42 U.S.C. §1383(c)(3) and 42 U.S.C. § 405(g), on August 14, 2014. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the

objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 C.F.R. §§ 404.1529, 416.929; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three-part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> requirement that such articulation of reasons by the [ALJ] be supported by
> substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for

refusing to credit the plaintiff's pain testimony or if the ALJ's reasons are not

supported by substantial evidence, the court must accept as true the pain testimony

of the plaintiff and render a finding of disability. *Id*.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20

C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in

sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Capel had not engaged in substantial gainful activity since his alleged onset date and therefore met Step One. (R. 54). Next, the ALJ acknowledged that Capel's severe impairments of recurrent chest wall pain, hypertension, gastroesophageal reflux disease ("GERD"), osteoarthritis, degenerative disc disease, and allergies met Step Two. (R. 54). The ALJ then proceeded to the next step and found that Capel did not satisfy Step Three, since he "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 56) (internal citations omitted). Although the ALJ answered Step

Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he

proceeded to Step Four, where he determined that Capel:

> has the residual functional capacity ["RFC"] to perform light,
> unskilled work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)
> except no climbing of ropes, ladders, or scaffolds; no work at
> unprotected heights or with hazardous machinery; no more than
> occasional stooping, crouching, crawling, or kneeling; no
> concentrated exposure to dust, fumes, or other respiratory irritants; no
> concentrated exposure to extreme heat; and no more than frequent
> interaction with coworkers, supervisors and the general public.

(R. 57). In light of Capel's RFC, the ALJ determined that Capel was "unable to

perform any past relevant work." (R. 64). Accordingly, the ALJ turned to Step

Five, considered Capel's age, education, work experience, RFC, and the testimony

of a vocational expert ("VE"), and determined that "there are jobs that exist in

significant numbers in the national economy that [Capel] can perform." (R. 65).

Because the ALJ answered Step Five in the negative, he determined that Capel was

not disabled. *Id*.

## V. Analysis

Capel raises multiple contentions of error which the court will outline and

address below. None of the contentions, however, establish that the ALJ

committed reversible error.

1. *The ALJ properly considered all of Capel's impairments and their combined effects.*

Capel argues that the ALJ failed to consider the combined effect of his impairments. He additionally argues that the ALJ failed to appropriately explain his reasoning for denying Capel's allegations of pain. The court disagrees.

When a claimant alleges several ailments, the Eleventh Circuit requires the Commissioner to consider the impairments in combination to determine whether the combined impairments render a claimant disabled. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). The ALJ here considered all of Capel's impairments (whether severe or not) and determined that Capel "does not have an impairment or combination of impairments that meets or medically equals" the listing criteria. (R. 55-56). *See Jones*, 941 F.2d at 1533 (holding that the ALJ's finding that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one [in the listings]" is sufficient to show that the ALJ had considered the impairments in combination); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (same). Moreover, in making his RFC determination, the ALJ thoroughly discussed Capel's testimony and medical records as they relate to his heart problems, shortness of breath, dizziness, sweating, right hand and arm pain, anxiety, acid reflux, and anxiety. (R. 57-64). In light of these "specific and well-articulated findings" by the ALJ, the court finds no error in the ALJ's evaluation of Capel's carpal tunnel, knee problems, and high

blood pressure. *See Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (quoting *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).

Capel also argues generally that the ALJ failed to give his pain testimony proper consideration. Doc. 10 at 7, 11. Capel correctly notes that the ALJ must articulate "explicit and adequate reasons" for rejecting allegations of pain. *See, e.g.*, *Holt v. Sullivan*, 921 F.2d 1221, 1223-24 (11th Cir. 1991). However, Capel fails to identify specifically where the ALJ's findings regarding Capel's complaints of knee pain, heart pain, and hives fall short of substantial evidence and instead merely asserts that he had alleged pain on multiple occasions. Under Eleventh Circuit law, "[i]ssues raised in a perfunctory manner, without supporting argument and citations to authorities, are generally deemed to be waived." *N.L.R.B. v. McClain of Georgia*, 138 F.3d 1418, 1422 (11th Cir. 1998). Even when Capel's brief is read liberally, however, the court notes that the ALJ specifically accommodated for Capel's chest wall pain and gastrointestinal pain when limiting Capel to light work. (R. 63). Additionally, the ALJ investigated in detail the inconsistencies between Capel's complaints of knee and wrist pain and the doctors' objective assessments of his condition during various visits, noting, for example,

that Capel had a normal range of motion in his musculoskeletal system and that he had displayed 5/5 grip strength in his right hand. (R.58-64).[1]

  2.  *The ALJ acted within his discretion when he did not order an additional consultative exam.*

Capel also argues that the ALJ erred by failing to order a consultative examination after he filed for his claim in March of 2012 and by allowing Dr. William Donnelan's June 2010 consultative examination to be considered. Doc. 10 at 7-8. The court notes at the threshold that, while the ALJ does have an obligation to develop a "full and fair record," ultimately the claimant "bears the burden of proving that he is disabled" and is therefore responsible for producing evidence accordingly. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Capel simply failed to meet his burden in this case.

Capel's argument that the ALJ should have ordered a consultative examination is unavailing for a number of reasons. First, Capel has failed to identify an obligation under which the ALJ should have ordered another consult. While Capel does emphasize that a consultative examination may be sought if "there is an indication of a change in [the claimant's] condition . . . but the current

---

[1] Capel also seems to generally assert that the ALJ inadequately addressed his complaints of fatigue. However, this assertion similarly fails because it is too conclusory. *N.L.R.B.*, 138 F.3d at 1422 ("Issues raised in a perfunctory manner, without supporting argument and citations to authorities, are generally deemed to be waived.").

severity of [the] impairment is not established," 20 C.F.R. § 404.1519a, he neglects

to identify how this rule establishes reversible error by the ALJ. Second, Capel's

representative seemed to concede at Capel's hearing that Donnelan's consult was

sufficient for this case; indeed, she told the court, "[W]e're fortunate enough to

have a prior [consultative exam] . . . which does document some RFC information .

. . ." (R. 75). It would encourage duplicity to permit parties to indicate at their

hearings that the medical record was sufficient to support their claim and then to

allow them to challenge the purported insufficiency of the same medical record on

appeal. Third, and perhaps most importantly, the record did not require a second

consultation because the ALJ not only had the benefit of Donnelan's 2010

consultation, but also the records from fourteen medical visits in the thirty-seven

months between Donnelan's examination and Capel's hearing.[2] (R. 58-61). This

medical evidence, which the ALJ examined in detail, provided sufficient

information upon which he could base his determination, and, as such, the ALJ had

no obligation to order an additional consultative examination. *See Wilson v. Apfel*,

179 F.3d 1276, 1278 (11th Cir. 1999) ("[W]e cannot agree . . . that the ALJ was

---

[2] While only three of these medical visits occurred prior to Capel's application for benefits, the medical record is nonetheless a complete record for the year prior to Capel's application. As Capel's representative stated at his hearing, there was "really no medical during [2011]." (R. 75). *See* 20 C.F.R. § 416.912(d) ("Before we make a determination . . . we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . .").

obligated to seek independent, additional expert medical testimony before concluding that [the claimant's] impairment was not severe" when the existing medical record was sufficient for a decision.); *Good v. Astrue*, 240 F. App'x. 399, 404 (11th Cir. 2007).

### 3. The ALJ acted within his discretion when giving "little weight" to Dr. Donnelan's medical opinions.

Capel asserts next that the ALJ erred by affording little weight to Donnelan's opinions, whom Capel describes as his treating physician, doc. 10 at 13-14, and, alternatively, an examining physician, *id.* at 8. According to Capel, the medical record (which consists of Capel's knee surgery, complaints of severe left knee pain during October and November 2012 medical visits, diagnosis of pes aserine bursitis and patellar grind from Cooper Green, and a referral to physical therapy) supports Donnelan's findings of a left knee impairment. *Id.* Consequently, Capel argues that the ALJ erred in deeming Donnelan's medical opinion worthy of only "little weight." *Id.* at 8-9. The court disagrees.

The court first finds that Donnelan is neither Capel's treating physician[3] nor entitled to great weight because he only conducted a consultative examination on Capel as part of Capel's prior application for benefits. (R. 58, 291-96). A one-time

---

[3] The Eleventh Circuit requires that an ALJ give "substantial or considerable weight" to the medical opinion of the claimant's treating physician unless "good cause" is shown. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

visit for treatment or for a consultative examination is insufficient to render treating physician status. *See, e.g.*, *Saucier v. Comm'r of Soc. Sec. Admin.*, 552 F. App'x. 926, 929 (11th Cir. 2014) (requiring that a treating physician have, or previously have had, an "ongoing treatment relationship" with the claimant); *see McNamee v. Soc. Sec. Admin.*, 164 F. App'x. 919, 923 (11th Cir. 2006) (finding that a doctor cannot be a treating physician – and thus benefit from this deferential standard – when he has examined the claimant for the purpose of a consultative examination). Moreover, because Donnelan only examined Capel once, the ALJ had no obligation to defer to him. *See, e.g.*, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that, because the physician had examined the claimant "on only one occasion, her opinion was not entitled to great weight"); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (noting that two examining physicians' opinions are "not entitled to deference because as one-time examiners they [are] not treating physicians").

The ALJ's decision to afford Donnelan's opinion little weight is also supported by substantial evidence given the inconsistencies between Donnelan's opinions and the objective medical evidence.[4] Indeed, an ALJ is free to reject the

---

[4]The ALJ explained that Donnelan's opinion regarding Capel's left knee limitations was inconsistent with objective medical evidence such as "x-ray imaging showing only mild degenerative changes in [Capel's] knee and x-ray imagining of the claimant's lumbar spine showing his gross alignment to be good,

opinion of any physician when evidence supports a contrary conclusion. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). By elaborating on the reasons behind his decision to afford Donnelan's opinions little weight, the ALJ satisfied his obligation to "state with particularity" the weight he has assigned each medical opinion as well as the reasons for so assigning. *See Sharfaz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

   4.  *The ALJ properly considered the physicians' opinions at Cooper Green Hospital, University of Alabama at Birmingham Hospital, and Birmingham Health Care.*

Capel also argues that the ALJ failed to properly consider the opinions of the physicians at Cooper Green Hospital, University of Alabama at Birmingham Hospital ("UAB"), and Birmingham Health Care. According to Capel, the ALJ should have given "controlling weight" to these physicians' opinions, and he asserts that the ALJ failed to appropriately address their opinions regarding Capel's chest pain and the anterior fascicular block diagnosis from Cooper Green on March 12, 2012. Doc. 10 at 10; *see* (R. 302).

   These contentions miss the mark, in part, because Capel lacked the "ongoing relationship" necessary for these physicians to qualify as his treating physicians. As such, the ALJ had no obligation to give additional deference to their opinions.

---

his posterior elements to be grossly intact, and his disc spaces to be preserved." (R. 64).

*See Saucier*, 552 F. App'x. at 929. More importantly, however, the ALJ did in fact take these physicians' opinions into consideration when determining Capel's limitations; the ALJ explicitly stated that he had "accounted for the claimant's history" of recurrent chest wall pain, GERD, and hypertension "by limiting him to light work. . . ." (R. 63, 64). Additionally, the ALJ discussed the physicians' diagnoses at length in his analysis of Capel's condition. (R. 57-64).

Moreover, the ALJ's decision regarding the severity and intensity of Capel's limitations is supported by substantial evidence – including the records of the Cooper Green, UAB, and Birmingham Health Care physicians. The ALJ examined in detail the objective medical evidence regarding Capel's heart pain, noting that at various visits to these hospitals, Capel presented with a regular heart rhythm, no acute findings, and no signs of "acute infarct or ischemic." (R. 329-31, 345, 353,-54, 368, 396, 399, 429). As for Capel's knee complaints, the ALJ investigated Capel's medical history, ultimately noting that "x-ray imaging of his left knee was normal except for a small spur on the patella." (R. 62); *see* (R. 431). The ALJ also observed that these physicians had documented that Capel had a normal range of motion, (R. 62); *see* (R. 443), that a heating pad "really helps" with his pain, (R. 62); *see* (R. 457), and that he had accomplished his rehabilitation goals, (R. 62); *see* (R. 453). Next, regarding Capel's complaints of chest pain, hypertension, and GERD, the ALJ not only described the objective medical evidence that indicated

Capel's symptoms were not disabling, but he still specifically accommodated for those complaints by limiting Capel to light work.[5] (R. 63-64). These findings are sufficient for the ALJ to conclude that Capel's limitations were not as severe as Capel contended.[6]

>   5. *The ALJ erred in relying on Dr. Estock's testimony, but that error was harmless.*

Capel argues that the ALJ erred by affording great weight to Dr. Robert Estock's opinions regarding Capel's limitations. Capel is correct that the ALJ could not afford great weight to Estock's opinion, but the reasons Capel advances – that the report of a reviewing non-examining physician cannot constitute

---

[5]The ALJ noted that, during many medical visits in 2012 and 2013, Capel presented with normal gastrointestinal statistics. (R. 298, 306, 368, 399, 415, 425, 428). As to Capel's hypertension, the ALJ reported that during multiple doctor visits in 2012, Capel's blood pressure was described as "benign." (R. 400, 415, 420, 429). Nonetheless, as indicated above, the ALJ still accounted for these ailments by limiting Capel to light work. (R. 63-64).

[6] Capel also argues that he should be deemed disabled because he could not afford more expensive treatments and that the typical course of treatment is "closed to him due to poverty." Doc. 10 at 11. Capel is correct that "when a claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting *Taylor v Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986) (internal quotations omitted)). However, there is no evidence here that Capel failed to get treatment because of poverty or that the ALJ based his findings on noncompliance with treatment. To the contrary, the ALJ based his finding on the fact that the objective medical evidence contradicts Capel's statements of the intensity and severity of his limitations. The ALJ's finding of "not disabled" additionally relied on testimony of a VE and of Capel's RFC, age, educational background, and work experience. (R. 65-66). While the court is sympathetic to Capel's economic hardship, that hardship cannot be the basis of remand here.

substantial evidence on which the ALJ can base his decision, doc. 10 at 9, – are not those that underpin the court's decision today. As the Commissioner's brief detailed, the ALJ relied on the opinion of a "single decision maker"[7] ("SDM") rather than Estock's opinion. (R. 375-395). In doing so, the ALJ erred because, as Judge Karon Bowdre explained when faced with similar facts, "The Commissioner's policy is that, on appeal, the opinion of a non-examining state agency single decision maker is entitled to no weight." *Stewart v. Astrue*, 2013 WL 5355571 (N.D. Ala. Sept. 24, 2013); *see also* Program Operations Manual System DI 24510.05, 2001 WL 1933365. However, ALJs' mistakes are subject to the harmless error rule; that is, if the ALJ's findings do not contradict his ultimate findings, his decision will stand. *Caldwell v. Barnhart*, 261 F. App'x. 188, 190 (11th Cir. 2008). Here, although the ALJ improperly gave "great weight" to Estock's determination that Capel could perform light work, (R. 64), as discussed above, the remaining record provided substantial evidence to support a finding that Capel was capable of performing a range of light work. Accordingly, the ALJ's error here was harmless.

---

[7] As the Commissioner's brief explains, the SDM program, "part of an experiment to expedite the processing of an applications, [allows] SDM[s to] make the initial disability determination in Alabama without the signature of a medical consultant." Doc. 11 at 14 n. 3; *see* 20 C.F.R. § 404.906(b)(2).

6. *The ALJ did not err in his application of the Medical-Vocational Guidelines.*

Capel argues that the ALJ committed reversible error by erroneously applying the Medical-Vocational grids at Step Five. Specifically, Capel claims that the ALJ failed to give appropriate credence to Capel's age at filing (50 years old) and instead considered medical history from a year earlier. (R. 13). In his brief, Capel also seems to assert that, by using the onset date of April 9, 2010, the ALJ had "effectively reopened" an earlier benefit application that Capel had filed[8] that also alleged an April 9, 2010 onset date. Doc. 10 at 13; *see* (R. 64-65).

These arguments are unavailing for a number of reasons. First, the ALJ considered Capel's age at the time of the hearing, noting initially that Capel was 48 years old on the alleged onset date but then stating that Capel had "subsequently changed age category to closely approaching advanced age." (R. 64-65). Second, neither age category would have affected Capel's disability determination. As the ALJ and the Commissioner both observed, Capel would not be deemed disabled under the designation of either "closely approaching advanced age" (50-54) or "younger individual" (age 18-49). *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 202.14, 202.21 (finding no disability for either age group); (R.64-65); Doc. 11 at 22-23. Third, the ALJ appropriately used the onset date of April 9, 2010 for

---

[8] Capel filed for SSD and SSI benefits in 2010 but was denied. He did not appeal that denial. Doc. 10 at 12; *see* (R. 192-94)

his analysis because that date is the onset date that Capel listed on his benefits application. (R. 154).

Finally, the effect of Capel's age categorization is "essentially theoretical" because the ALJ did not base his final determination on the grids. *Miller v. Comm'r of Soc. Sec.*, 241 Fed. App'x 631, 635 (11th Cir. 2011).Where, as here, a claimant is unable to perform the full range of work at a particular functional level or has non-exertional impairments that significantly limit basic work skills,[9] the ALJ must also consider testimony of a VE in addition to the grids when determining job availability. *See, e.g.*, *Walker*, 826 F.2d at 1002-03. Indeed, consistent with the regulations and established legal precedent, after finding that Capel's "ability to perform all or substantially all of the requirements of [light] level of work [was] impeded by additional limitations," (R. 65), the ALJ turned to a VE to determine whether jobs existed in the national economy for an individual with Capel's age, education, work experience, and RFC. *Id.* at 65-66. The ALJ then noted the VE's opinion that Capel could work as an assembler, inspector, and sorter. *Id.* Consequently, based on the VE's opinion and Capel's RFC, age, education, and work experience, the ALJ determined that Capel was "capable of

---

[9] At Step Five, the ALJ stated, "If the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (R. 65).

making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.*

In other words, even if the ALJ had improperly determined Capel's age category and if that age category had indicated that Capel might be disabled, because the opinion of a VE is substantial evidence supporting the ALJ's finding that Capel was not disabled, the ALJ's error, if any, was harmless. *See Miller*, 241 Fed. App'x at 635 n.1 ("Even assuming without deciding that the ALJ's finding that [plaintiff] was a person closely approaching advanced age was erroneous, that error was harmless because substantial evidence (e.g., the VE's testimony and Miller's RFC) supported the finding that other jobs were available that Miller could perform."). Accordingly, in light of the VE's testimony that significant numbers of jobs exist in the national economy that a person with Capel's RFC could perform, substantial evidence supports the ALJ's conclusion that Capel failed to demonstrate that he was disabled. *See id.* at 635.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Capel is not disabled is supported by substantial evidence and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 15th day of September, 2015.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE